**WELLS' DAIRY, INC., Plaintiff,**

**v.**

**TRAVELERS INDEMNITY COMPANY OF ILLINOIS, Travelers Insurance Company, and Travelers Property Casualty Corporation, Defendants.**

No. C01–4097–MWB.

United States District Court,
N.D. Iowa,
Western Division.

July 9, 2003.

Mary Rose Alexander, Latham & Watkins, Chicago, IL, Richard H. Moeller, Berenstein, Moore, Berenstein, Heffernan & Moeller, L.L.P., Sioux City, IA, for plaintiff Wells at oral arguments.

Stephen G. Goldman, Gerald P. Dwyer, Jr., Robinson & Cole, L.L.P., Hartford, CT, Jaki K. Samuelson, Whitfield & Eddy, P.L.C., Des Moines, IA, for defendant Travelers at oral arguments.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION TO ENFORCE

BENNETT, Chief Judge.

### I. INTRODUCTION

On August 30, 2002, plaintiff Wells' Dairy, Inc. ("Wells") filed a motion for partial summary judgment against defendants Travelers Indemnity Company of Illinois, Travelers Insurance Company, and Travelers Property Casualty Corporation (collectively "Travelers" unless otherwise indicated). On January 31, 2003, the court granted that portion of Wells's motion in which it sought a declaration that Travelers has an obligation to defend Wells against lawsuits brought by two customers, Pillsbury Company ("Pillsbury") and Eskimo Pie Corporation ("Eskimo Pie").

On May 23, 2003, Wells filed its Motion To Enforce The Court's Order Of January 31, 2003 Regarding Traveler's Duty To Defend (# 135). In its motion, Wells requests that the court order Travelers to reimburse Wells $590,545.97 for the costs of defense in the lawsuits brought by Pillsbury and Eskimo Pie through January 31, 2003, require Travelers to pay prejudgment interest for those costs, and require Travelers to reimburse Wells for its reasonable attorney's fees and expenses as those costs are incurred. Travelers filed a timely response to Wells's motion in which it contends that the court should deny the motion on the following grounds: that Wells is not entitled to any further decision or order because the court's order of January 23, 2003, did not require Travelers to make any payments to Wells; that it is inappropriate for the court to order reimbursement of attorney's fees based on the invoices submitted by Wells because those invoices raise factual questions regarding their propriety; that Travelers's

duty to defend Wells does not require it pay the fees of counsel selected by Wells; and that Travelers has offered to retain attorney William Fanter and his firm, Bradshaw, Fowler, Proctor & Fairgrave, P.C., to defend Wells but Wells has refused this offer. Wells filed a reply brief in support of its motion on June 13, 2003.

Pursuant to Travelers's request, the court held telephonic oral arguments on Wells's Motion To Enforce The Court's Order Of January 31, 2003 Regarding Traveler's Duty To Defend on June 16, 2003. At the oral arguments, plaintiff Wells was represented by Mary Rose Alexander of Latham & Watkins, Chicago, Illinois, and Richard H. Moeller of Berenstein, Moore, Berenstein, Heffernan & Moeller, L.L.P., Sioux City, Iowa. Defendant Travelers was represented by Stephen G. Goldman and Gerald P. Dwyer, Jr. of Robinson & Cole, L.L.P., Hartford, Connecticut, and Jaki K. Samuelson of Whitfield & Eddy, P.L.C., Des Moines, Iowa.

## II. LEGAL ANALYSIS

### A. Wells's Selection Of Defense Counsel

In granting Wells's partial motion for summary judgment, the court concluded that Travelers has a duty to defend Wells in the underlying lawsuits because there is potential or possible liability to indemnify Wells based upon the facts appearing at the outset of the underlying cases. *See United Fire & Cas. Co. v. Shelly Funeral Home, Inc.*, 642 N.W.2d 648, 656 (Iowa 2002) (the duty to defend arises "whenever there is potential or possible liability to indemnify the insured based on the facts appearing at the outset of the case.") (quoting *First Newton Nat'l Bank v. General Casualty Co. of Wis.*, 426 N.W.2d 618, 623 (Iowa 1988)); *see also Yegge v. Integrity Mut. Ins. Co.*, 534 N.W.2d 100, 102 (Iowa 1995) (duty to defend whenever potential liability to indemnify based upon facts appearing at outset of the case; however, duty to defend and duty to indemnify are co-extensive duties in that there is no duty to defend unless there is a duty to indemnify); *Essex Ins. Co. v. Fieldhouse, Inc.*, 506 N.W.2d 772, 774 (Iowa 1993) (noting that in analyzing the potential duty to defend, which is broader than the duty to indemnify, the appropriate starting point is the allegations contained in the petition); *Kartridg Pak Co. v. Travelers Indem. Co.*, 425 N.W.2d 687, 688 (Iowa Ct.App.1988) (to determine whether insurer had duty to defend, court construes the policy and looks to the pleadings and all other admissible and relevant facts in the record to determine whether coverage exists under the policy).

The central issue raised in Wells's current motion is the degree of autonomy Wells may exercise in selecting its own defense counsel, and whether Travelers is liable for Wells's attorney's fees, in light of the fact that Travelers refused to defend Wells under a reservation of rights. Wells argues that because Travelers refused to defend Wells initially under a reservation of rights, Wells was free to pursue its own defense not subject to Travelers's control. Wells asserts that Travelers must accordingly reimburse Wells for attorney's fees incurred up to this point in the case and must pay all future attorney's fees incurred by Wells in its defense of the underlying actions. Travelers responds that Wells is not entitled to unilaterally select defense counsel and to have Travelers reimburse Wells for the costs of this unilaterally selected counsel. Instead, Travelers contends that it is only obligated to pay the fees of independent defense counsel that it has selected. Thus, the central issue for resolution is which party controls the defense here?

Generally, under Iowa law, "[w]hen an insurer defends an insured, it has control over the defense and over settlement."[1] *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 643 (Iowa 2000); *see Kooyman v. Farm Bureau Mut. Ins. Co.*, 315 N.W.2d 30, 32 (Iowa 1982). This control, however, is not absolute. *See Kelly*, 620 N.W.2d at 639 (holding that "if the insurance company has breached the contract by wrongfully rejecting a reasonable settlement offer, the insured may accept the settlement offer over the insurer's objection without breaching policy duties and losing his right to seek coverage."). Here, Travelers refused to defend Wells when Wells made a timely demand for Travelers to provide it with a defense to the underlying lawsuits. The parties have cited the court to no Iowa case dealing with precisely the issue of whether an insurer's refusal to defend on the ground of noncoverage results in that insurer forfeiting its rights to the control of the defense, and the court's own search has found none. Other states' supreme and appellate courts, however, have held that when an insurer refuses to defend its insured, it does so at its own peril and loses the right to control the defense. *See Eigner v. Worthington*, 57 Cal.App.4th 188, 196, 66 Cal.Rptr.2d 808, 813 (1997) ("When an insurer wrongfully refuses to defend, the insured is relieved of his or her obligation to allow the insurer to manage the litigation and may proceed in whatever manner is deemed appropriate."); *Benjamin v. Dohm*, 189 Wis.2d 352, 365, 525 N.W.2d 371, 376 (Ct.App.1994) ("An insurer will lose its right to contest coverage and to control the defense when it improperly refuses to defend the insured."); *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Hawaiʻi 277, 296, 875 P.2d 894, 913 (1994) (noting that "the insurer that refuses to defend does so at its own peril. For example, the insurer forfeits any right to control the defense costs and strategy . . ."); *Grube v. Daun*, 173 Wis.2d 30, 76, 496 N.W.2d 106, 124 (Ct.App.1992) (holding that insured has lost its contractual right to control insured's defense by inappropriately refusing to defend); *Patrick v. Head of Lakes Coop. Elec. Ass'n*, 98 Wis.2d 66, 72–73, 295 N.W.2d 205 (Ct.App.1980) (when an insurer refuses to defend, it loses the right to control the defense or the settlement of the action); *Orleans Village v. Union Mut. Fire Ins. Co.*, 133 Vt. 217, 220, 335 A.2d 315, 318 (1975) (holding that "an insurer who refuses to

---

1. The parties agree that the court need not make a determination as to a choice of laws in this case because there is no conflict between Iowa and Minnesota law on the issues raised by Wells's Motion To Enforce The Court's Order Of January 31, 2003 Regarding Traveler's Duty To Defend. The court agrees that there is no "true conflict" between the law of Iowa and the law of Minnesota as to the issues before the court on Wells's Motion To Enforce The Court's Order Of January 31, 2003 Regarding Travelers's Duty To Defend and therefore the court need not make a choice of law decision. *See Phillips v. Marist Soc'y*, 80 F.3d 274, 276 (8th Cir.1996) ("[B]efore entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states."); *Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir.1995) (first question was whether there was a "true conflict of laws," and where there was no doubt that case presented a "true conflict," court turned to consideration of which jurisdiction's law should apply under Minnesota conflict-of-laws rules); *Cleary v. News Corp.*, 30 F.3d 1255, 1265 (9th Cir.1994) (court must first determine whether "true conflict" exists between the laws of the jurisdictions); *Harlan Feeders, Inc. v. Grand Labs., Inc.*, 881 F.Supp. 1400, 1405 (N.D.Iowa 1995) (noting that before any choice of law need be made, there must be a "true conflict" between the laws of the possible jurisdictions on the pertinent issue). Therefore, the court will apply Iowa law in addressing the issues raised by Wells's Motion To Enforce The Court's Order Of January 31, 2003 Regarding Travelers's Duty To Defend.

defend after timely demand is made upon it to do so cannot control the defense or expect advance notice of the refused party's trial strategy."); *Arenson v. National Auto. & Cas. Ins. Co.*, 48 Cal.2d 528, 537, 310 P.2d 961, 967 (1957) (noting that " 'An insurer's unwarranted refusal to defend a suit against the insured has been held to relieve the latter from his contract obligation to leave the management of such suits to the insurer, and to justify him in defending the action on his own account.' ") (quoting 8 APPLEMAN, INSURANCE LAW AND PRACTICE 36–41, § 4691); *see also Drinnon v. Oliver*, 24 Cal.App.3d 571, 580, 101 Cal.Rptr. 120, 125 (1972) (holding that an insurer which wrongfully refuses to defend loses control over the management of the claim), *overruled on other grounds in Johnson & Johnson v. Superior Court*, 38 Cal.3d 243, 255, 211 Cal.Rptr. 517, 695 P.2d 1058 (1985). Given the Iowa Supreme Court's decision in *Kelly*, that an insurer can lose its right to control settlement negotiations by wrongfully rejecting a reasonable settlement offer, *see Kelly*, 620 N.W.2d at 639, the court concludes that the Iowa Supreme Court would likewise adopt the position taken by its sister courts and hold that an insurer's refusal to defend a suit against its insured results in the insurer losing the right to control the defense of the action. Thus, the court concludes that in this case, Travelers lost its right to control Wells's defense of the underlying actions when it refused to defend Wells in June 2000, when the first of the underlying lawsuits was filed.

### B. Payment Of Wells's Defense Counsel's Fees

Wells requests in its motion that the court order Travelers to pay Wells $540,545.97, which it asserts is its defense costs in the underlying lawsuits through January 31, 2003. Wells also asks the court to order Travelers to pay Wells prejudgment interest on these defense costs. Wells further requests that Travelers be ordered to reimburse Wells for its reasonable attorney's fees and expenses incurred in defense of the underlying lawsuits as those costs are incurred. Travelers responds that its is entitled to a jury trial on the question of whether $540,545.97 constitute reasonable defense costs. Travelers further contends that it is entitled to a jury trial on the issue of whether the $540,545.97 in costs were incurred in defense of the underlying lawsuits. Travelers argues that Wells has submitted bills to it that are grossly excessive and for services unrelated to the defense of the underlying lawsuits.

The Iowa Supreme Court has held that:

> an insurer who refuses, contrary to its contractual obligation, "to defend a third-party action against its insured on the ground the policy involved affords no coverage is liable for attorney fees incurred by the insured in the defense of the action brought against him [or her]."

*Clark–Peterson Co., Inc. v. Independent Ins. Assocs., Ltd.*, 514 N.W.2d 912, 915 (Iowa 1994) (quoting *New Hampshire Ins. Co. v. Christy*, 200 N.W.2d 834, 845 (Iowa 1972)); *see also Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 799, 683 P.2d 440, 447 (Ct.App.1984) (holding that attorney's fees and costs incurred by insured as a result of the refusal of insurer to assume the defense in the suit by third parties against insured were properly recoverable as damages for breach of contract); *Bankers & Shippers Ins. Co. v. Electro Enters.*, 287 Md. 641, 648, 415 A.2d 278, 283 (1980) (holding that an insurer was liable to the insured for the costs of defending underlying personal injury suits where the insurer had a duty to defend the

insured); *Afcan v. Mutual. Fire, Marine and Inland Ins. Co.*, 595 P.2d 638, 647 (1979) ("When an insurer breaches the insurance contract by wrongfully refusing to defend its insured, the insurer will always be liable for the reasonable costs and attorney's fees subsequently incurred by the insured in the defense of the claim."); *Cooley v. Mid–Century Ins. Co.*, 52 Mich.App. 612, 218 N.W.2d 103 (1974) ("An insurer who wrongfully refuses to defend an action against the insured, on the ground that the action was not within the coverage of the policy, is liable for reasonable attorney fees incurred by the insured in the defense of the action brought against them."). Thus, the court concludes that under Iowa law, an insured is entitled to recover reasonable fees for an insurer's breach of its duty to defend its insured.

■ Under Iowa law, the reasonableness of attorney's fees is evaluated by considering the experience, skill, and professional standing of the attorney; the time and labor involved in the litigation; the magnitude of the claim; the difficulty of the case; and the length and nature of the professional relationship between the attorney and client. *See King v. Armstrong*, 518 N.W.2d 336, 338 (Iowa 1994) (citing factors identified in Disciplinary Rule 2–106(B) of the Iowa Code of Professional Responsibility for Lawyers); *Landals v. George A. Rolfes Co.*, 454 N.W.2d 891, 893 (Iowa 1990) (noting that in determining the appropriate fee award, the Iowa Supreme Court looks at: "the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibilities assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar services."); *Lundy, Butler & Lundy v. Bierman*, 398 N.W.2d 212, 215 (Iowa Ct.App.1986) (citing factors identified in Disciplinary Rule 2–

106(B) of the Iowa Code of Professional Responsibility for Lawyers); *In re Jayne's Marriage*, 200 N.W.2d 532, 534 (Iowa 1972) ("We are mindful a determination of reasonable attorney fees in the case at bar must include but is not limited to consideration of such elements as the amount of time spent; nature, extent and difficulty of the services; amount involved; responsibility assumed; results obtained; customary charges for similar service; and the professional standing and experience of the attorney."); *see also Parrish v. Denato*, 262 N.W.2d 281, 285 (Iowa 1978) (" 'In determining a reasonable attorney fee, generally the time necessarily spent, the nature and extent of the ‘service, the amount involved [or, as here, the possible punishment involved], the difficulty of handling and importance of issues, responsibility assumed and the results obtained, as well as the standing and experience of the attorney in the profession should be considered.' " (Citations omitted.)).

■ However, under Iowa law, the question of what amount constitutes a reasonable attorney's fee is an issue of fact to be determined as any other issue of fact. *See Peoples Trust & Sav. Bank v. Baird*, 346 N.W.2d 1, 2 (Iowa 1984); *see also Tanenbaum v. Agri–Capital, Inc.*, 885 F.2d 464, 471 (8th Cir.1989) ("The amount of attorney's fees is a question of fact for the trial court and we will not disturb the award absent an abuse of discretion."); *Finnell v. Seismic*, 67 P.3d 339, 347 (Okla. 2003) ("The reasonableness of an attorney's fee request is a question of fact for the trier."); *Geodyne Energy Income Prod. P'ship I–E v. Newton Corp.*, 97 S.W.3d 779, 790 (Tex.App.2003) ("The determination of reasonable attorney's fees is a question for the trier of fact."); *Andrew L. Youngquist, Inc. v. Cincinnati Ins. Co.*, 625 N.W.2d 178, 188 (Minn.Ct.App.2001) ("The reasonable value of attorney fees is

a question of fact, and we must uphold the district court's findings on that issue unless they are clearly erroneous."); *Sockwell v. Phelps,* 20 F.3d 187, 193 (5th Cir. 1994) ("The question of what constitutes reasonable attorney's fees is a question of fact to be determined by the fact finder."); *Jerry Parks Equip. Co. v. Southeast Equip. Co.,* 817 F.2d 340, 344 (5th Cir. 1987) (holding that under Texas law that question of what is a reasonable attorney's fee is a fact question); *Amerman v. Lakeland Dev. Corp.,* 295 Minn. 536, 537, 203 N.W.2d 400, 400–01 (1973) (holding that the reasonableness of attorney's fees is a question of fact). *But see Tesch v. Tesch,* 63 Wis.2d 320, 335, 217 N.W.2d 647 (1974) (holding that a circuit court generally "has the expertise to evaluate the reasonableness of the fees with regard to the services rendered." and noting that "[i]t is not really the type of issue or question of fact where an adversary presentation is necessary to the presentation of evidence necessary to a determination."). Thus, because Travelers contests the reasonableness of the $540,545.97 Wells has purportedly incurred in defense costs in the underlying lawsuits, determination of the reasonableness of these costs must be made by a jury. Likewise, the court cannot order Travelers to pay Wells's attorney's fees and expenses incurred in defense of the underlying lawsuits as those costs are incurred because the reasonableness of those costs lies with the ultimate fact finder in this case.

▮ Although the court has concluded that the reasonableness of Wells's defense costs is a determination that must be made by a jury, this conclusion does not end the court's analysis. Because the court has already found that Travelers has an obligation to defend Wells in the underlying lawsuits and Wells has retained counsel to defend itself in those actions, it is without

question that Wells has sustained defense costs. Although a jury may not award Wells the entirety of those defense costs, it is clear that Wells is entitled to be reimbursed for at least some of its attorney's fees. Therefore, the court orders that Travelers reimburse Wells in the amount of $295,272.98 for the costs of defense in the lawsuits brought by Pillsbury and Eskimo Pie through January 31, 2003. The court further orders Travelers to reimburse Wells for one-half of its reasonable attorney's fees and expenses as those costs are subsequently incurred. The reimbursement sums paid by Travelers to Wells for these defense costs will, of course, be deducted from the jury's award of Wells's reasonable attorney's fees and costs. In the event that the jury would award Wells less than that paid to it by Travelers for Wells's defense costs, Wells will be obligated to repay Travelers for any such overpayment.

## III. CONCLUSION

Wells's Motion To Enforce The Court's Order Of January 31, 2003 Regarding Traveler's Duty To Defend is **granted in part and denied in part.** The court orders that Travelers reimburse Wells in the amount of $295,272.98 for the costs of Wells's defense in the lawsuits brought by Pillsbury and Eskimo Pie through January 31, 2003. The court further orders Travelers to reimburse Wells for one-half of its reasonable attorney's fees and expenses as those costs are subsequently incurred.

**IT IS SO ORDERED.**